HERSCH STRASSLER, also Known as HARRY STRASSLER, Suing on Behalf of Himself and Other Creditors of ADOLF MANDEL Who May Be Similarly Situated and Who May Come in and Become Parties and Contribute to the Expenses of This Action, Respondent, v. ILLINOIS SURETY COMPANY, Appellant.

First Department, November 3, 1916.

Principal and surety — private banker receiving money for transportation to foreign countries — bond not conforming to requirements of existing statutes — when depositor cannot enforce such bond as common-law obligation — statutes construed.

Where a private banker engaged in receiving money for transmission to foreign countries gave a bond pursuant to chapter 185 of the Laws of 1907, as amended by chapter 479 of the Laws of 1908, at a time when said statutes had been repealed and were no longer of any force or effect, the bond can only be enforced against the surety by a person who deposited money with the principal as a common-law contract or obligation based upon a sufficient consideration.

Where such bond was executed and delivered to the Comptroller of the State, a consideration sufficient to enable the plaintiff to recover is not established by the fact that the principal, as a consideration for the bond, paid a premium to the surety.

Moreover, as the bond, considered as a common-law obligation, ran to the People of the State as obligee and not to persons depositing money with the principal, and as the instrument was under seal, depositors cannot sue thereon, not being parties named therein.

*It seems*, that an action to enforce such bond can only be brought by the People of the State.

APPEAL by the defendant, Illinois Surety Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of February, 1916, upon the report of a referee appointed to hear and determine the issues.

*L. Laflin Kellogg,* for the appellant.

*Alex. I. Hahn,* for the respondent.

DOWLING, J.:

Defendant appeals from a judgment entered against it upon the report of a referee in favor of plaintiff and other creditors of Adolf Mandel, awarding them the sum of $13,228.09, with costs.

Adolf Mandel was a private banker in the city of New York. On September 1, 1908, as principal, he executed a bond in the sum of $15,000, with the American Surety Company as surety, to the People of the State of New York, conditioned for the faithful and diligent holding and transmission of any and all moneys or the equivalent thereof, which should be delivered to him for transmission to a foreign country or countries, and to repay any money received on deposit, and to duly account for, and promptly pay over, all moneys, or the equivalent thereof, received by him as aforesaid. This bond was recited to have been given pursuant to chapter 185 of the Laws of 1907, as amended by chapter 479 of the Laws of 1908. Thereafter Mandel continued in the banking business, and between September 1, 1908, and August 31, 1910, received on deposit, to be returned upon demand, from the sixty-eight creditors whose claims have been proven in this action, sums aggregating $13,228.09. With these sums still in his possession, Mandel on February 15, 1913, executed to the People of the State of New York a new bond in the sum of $15,000, whereon he was principal and the Illinois Surety Company was surety. The bond recited that, "Whereas, Adolf Mandel the above bounden principal is engaged in or is about to engage within this State in the selling of steamship or railroad tickets for transportation to or from foreign countries and in conjunction with said business receives or is about to receive money on deposit or carries

on or is about to carry on the business of receiving deposits of money for the purpose of transmitting the same, or the equivalent thereof, to foreign countries and is required to make, execute and deliver a bond pursuant to chapter 185 of the Laws of 1907, as amended by chapter 479 of the Laws of 1908.

"Now the condition of this obligation is such that if the above bounden Adolf Mandel shall faithfully and diligently hold and transmit any and all moneys or the equivalent thereof which have been or shall be delivered to it or them for transmission to a foreign country or countries, and repay any money which had been or shall be received on deposit as provided by said chapter 185 of the Laws of 1907, as amended by chapter 479 of the Laws of 1908, and duly account for and promptly pay over all moneys or the equivalent thereof which have been or shall be received by it or them as aforesaid, then this obligation to be void, otherwise to remain in full force and virtue. In default thereof the parties hereto will pay all damages, costs and expenses resulting from such default, not exceeding the sum above specified." Both the bonds in question were duly filed with the Comptroller of the State of New York. It is defendant's contention that this bond was given in substitution of the prior bond of the American Surety Company, and proof was given seeking to establish that the intention of the parties was that the American Surety Company should be released by the giving of the new bond. No part of the sums in question was ever repaid to the depositors and Mandel was adjudicated a bankrupt in December, 1914.

Defendant contests its liability upon the bond in suit upon the ground that, although both the recital and condition of the bond set forth that it was given pursuant to chapter 185 of the Laws of 1907, as amended by chapter 479 of the Laws of 1908, yet on February 15, 1913, when the bond was given, both the statutes referred to had been repealed and were no longer of any force or effect. It also contends that as the consideration for the giving of the bond was the release of the American Surety Company from its existing bond, and as the State Comptroller had no power to consent to such release, the defendant's bond was without consideration and no liability can be predicated thereon.

It is quite true that chapter 185 of the Laws of 1907 and chapter 479 of the Laws of 1908 were expressly repealed by chapter 25 of the Laws of 1909 (Consol. Laws, chap. 20, art. 27, § 400), being the General Business Law. They were, however, substantially re-enacted by article 10 of the same statute. But the latter article was itself repealed by chapter 348 of the Laws of 1910, entitled "An act to amend the General Business Law, in relation to private banking, and to repeal article ten thereof, relating to ticket agents." By this statute article 3a was added to the General Business Law and thereby the conditions regulating private banking were materially changed, and the applicant for a license to do business as such was required to deposit with the State Comptroller $10,000 in money or securities, and in addition to execute to the People of the State of New York a bond in a sum to be fixed by the Comptroller (not less than $10,000 nor more than $50,000) conditioned "upon the faithful holding of all moneys that may be deposited with the applicant, in accordance with the terms of the deposit and the repayment of such moneys so deposited and upon the faithful transmission of any money which shall be delivered to such applicant for transmission to another, and in the event of the insolvency or bankruptcy of the applicant, upon the payment of the full amount of such bond to the assignee, receiver or trustee of the applicant, as the case may require, for the benefit of the persons making such deposits and of such persons as shall deliver money to the applicant for transmission to another." It was further provided (§ 2) that the repeal of the prior statutes was not to affect any right already existing or accrued, or any liability incurred prior to the passage of the act. Chapter 348 of the Laws of 1910 was amended by chapter 393 of the Laws of 1911, whereby in addition to the deposit theretofore required a bond was to be given to the People of the State of New York, "executed by the applicant and by a surety company approved by the Comptroller, conditioned upon the faithful holding of all moneys that may be deposited with the applicant, in accordance with the terms of the deposit and the repayment of such moneys so deposited and upon the faithful transmission of any money which shall be delivered to such applicant

for transmission to another, and in the event of the insolvency or bankruptcy of the applicant, upon the payment of the full amount of such bond to the assignee, receiver or trustee of the applicant, as the case may require, for the benefit of the persons making such deposits and of such persons as shall deliver money to the applicant for transmission to another."

As to the penalty of the bond, it was provided: "The penalty of the bond shall be five thousand dollars if the applicant is engaged only in the business of receiving money for transmission to another; in all other cases the amount of such penalty shall, if the deposits of the applicants do not exceed twenty-five thousand dollars, be five thousand dollars, and if in excess thereof, the penalty of such bond shall be increased five thousand dollars for each additional twenty-five thousand dollars of deposits, or fraction thereof, not exceeding, however, a maximum penalty of fifty thousand dollars." The statute of 1911 was repealed by chapter 369 of the Laws of 1914, being the Banking Law (Consol. Laws, chap. 2), but that repeal is not material to the question before us. The fact remains that when the bond in suit was given by defendant, the statutes in conformity with which it purported to be given had been repealed, and the form of the bond did not comply with the then existing statute.

Not having been entered into pursuant to statutory authority (for the statutes under which it was recited to be given had been repealed and it complied with the requirements of no existing statute), the bond may nevertheless be enforced as a common-law contract or obligation, if based upon a sufficient consideration. (*Toles* v. *Adee,* 84 N. Y. 222.) Defendant's reply to this is, that the bond was based on no consideration whatsoever, and is a mere *nudum pactum,* because the only possible consideration for the giving of the new bond was the release of the original obligation of the American Surety Company, and as the State Comptroller had no authority in law to discharge that company from its liability already accrued, or to accrue, upon its bond, there was no consideration passing to defendant for the execution of the new bond. It is quite true that the first authorization given the State Comptroller to discharge a surety upon such a bond as the one in suit and to

accept a new bond in place thereof was conferred by chapter 348 of the Laws of 1910, and the original surety upon the filing of a new bond was only discharged as to future liability, and not as to obligations which had theretofore accrued. At the time the bond in suit was given the statute still gave power to the Comptroller only to accept a new bond which would relieve the original surety from future liability, and not from liability theretofore accruing. (See Laws of 1911, chap. 393.) But the allegation of the complaint, which is not denied by the answer, is that the bond in suit was made, executed and delivered to the Comptroller of the State of New York by Mandel as principal and defendant as surety "for and in consideration of a certain charge or premium paid therefor by the said Adolf Mandel to the said defendant Illinois Surety Company." This, however, is not sufficient to bring the case within the doctrine of *Toles* v. *Adee* (*supra*), for plaintiff neither alleged nor proved that the bond was issued upon a *sufficient* consideration.

However, even if plaintiff had made such proof, he could not maintain this action, as the bond was under seal and he was not a party thereto nor named therein. (*Henricus* v. *Englert*, 137 N. Y. 488; *Alexander* v. *Union Surety & Guaranty Co.*, 89 App. Div. 3.) Plaintiff replies to this that by chapter 185 of the Laws of 1907, as amended by chapter 479 of the Laws of 1908 (referred to in the bond and thereby, it is claimed, becoming a part of the bond as if fully set forth therein), it was provided that "a suit to recover on a bond required to be filed under the provisions of this act may be brought by or upon the relation of any party aggrieved." The answer to this proposition is: (1) We are not now considering the bond as a statutory one, but as a common-law obligation; (2) at the time the bond in suit was given, it was not one "required to be filed" under the specified chapters of the statutes of 1907 and 1908, for they had been repealed; (3) section 4 of chapter 185 of the Laws of 1907, giving the right to sue as quoted, had been repealed, with the rest of the chapter; (4) chapter 393 of the Laws of 1911 had been passed, creating a new procedure to be followed in actions brought on the bonds of private bankers, by which the State Comptroller was to report the insolvency of a banker to the Attorney-General, who thereupon was to commence an

action to wind up the insolvent's affairs and the receiver appointed in such an action was authorized to sue upon the bond. But that provision of law applied only to bonds given pursuant to the statute of 1911. So that when this bond was given there was no provision of law allowing any individual aggrieved to sue upon it. Treating it as we must in view of all the circumstances, as a common-law obligation under seal, action could only be brought thereon by the obligee named therein, the People of the State of New York.

The judgment appealed from will, therefore, be reversed, with costs to appellant, and as the views heretofore expressed lead to the conclusion that plaintiff cannot successfully maintain this present action and cannot introduce further evidence to change the legal situation, the complaint will be dismissed, with costs. The appropriate findings and judgment may be submitted in accordance herewith.

CLARKE, P. J., McLAUGHLIN, SCOTT and SMITH, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs. Order to be settled on notice.